## Bayne *against* Wylie.

The validity of an assignment for the benefit of creditors, is not affected by the circumstance of its prescribing a particular form of release. The creditor is a purchaser of his preference, and must take it on the debtor's terms.

A stipulation, in the assignment, for the delivery of the merchandize assigned, in specie, to a particular class of preferred creditors, at prime cost, the value to be settled by the assignee, is valid and proper.

ERROR to the district court of *Allegheny* county.

Andrew Wylie, assignee of H. N. and W. W. Walters, against Andrew Bayne, high sheriff of Allegheny county. This was an action of trespass *de bonis asportatis*.

The parties agree upon the following case, stated for the opinion of the court, to be considered in the nature of a special verdict, with leave to either party to take a writ of error.

The plaintiff claims title to the goods, for the taking of which the

X.—2 B

above action is brought, by virtue of the following deed of assignment, viz.

This indenture made and concluded this 28th day of September, between Hanson N. Walters and William W. Walters, merchants, trading and doing business under the firm and style of Hanson N. Walters & Co., parties of the first part, and Andrew Wylie, party of the second part, both of the city of Pittsburgh, Pennsylvania.

Whereas the said parties of the first, owing to the great pressure of the times, have been unable to meet and pay off the claims upon them, which they justly owe, witnesseth that the said *Hanson* N. and William W. Walters, in consideration of 1 dollar, to them in hand paid, the receipt whereof is hereby acknowledged, and of the covenants and agreements hereinafter contained, do hereby give, grant and assign, and transfer unto the said Andrew Wylie, and his assigns, all their merchandize, wares, stock in trade, and all sums of money, due or coming to them on mortgages, bonds, notes, bills of exchange, or book accounts, or other manner whatsoever, to have and to hold to the said Andrew Wylie, upon the trust following, viz: In trust to sell or dispose of, at public or private sale, with the reservation hereinafter mentioned, all the goods, &c., and to collect all the sums of money aforesaid, and divide and distribute the proceeds in the following manner, viz:

1. From the moneys due to the said H. N. & William W. Walters, by book account or otherwise, and which may be collected, to pay, in the first place, John B. Warden his full claim, for 1000 dollars, or thereabouts; and to William G. Alexander, also, his entire claim, for 175 dollars, which will be due him, should a draft come back on Erie, with his endorsement, protested.

2. Charles F. Raymond, of Philadelphia, to be paid his claim, for which he has obtained a judgment, for something over 700 dollars; and James Parker, his claim for about 175 dollars; and also James Walters, of Philadelphia, to be reimbursed whatever sum or sums of money which he has paid, or shall hereafter pay, for or on account of endorsements, acceptances, or other undertakings, for the said Hanson N. Walters and William W. Walters, partners as aforesaid.

3. The said trustee shall distribute among such creditors as may release within sixty days from the date hereof the said H. N. Walters & W. W. Walters from their liabilities to the said creditors, in every manner, for any debt or debts heretofore contracted, and who shall sign the release appended hereto, as evidence thereof, all the wares and merchandize of them the said H. N. & W. W. Walters, now in their store-room in the city of Pittsburgh, at their prime cost, exclusive of carriage, until each shall have received payment of his claim in full, provided the goods, &c., should be sufficient for that purpose; and if they should not prove sufficient, then this distribution to be made *pro rata;* the question of prime cost to be settled in every instance by the trustee; and no distribution or division to be made until the expiration of sixty days from the date of this in-

[Bayne v. Wylie.]

denture. Should the goods, &c., be more than sufficient to pay the creditors who may sign the release hereto appended, then the residue to be sold by the said trustee, as he shall think best for the interest of the creditors, and the proceeds to be distributed among them *pro rata.* But should the goods and merchandize, estimated at their prime cost as aforesaid, prove insufficient to satisfy the claims of those who may sign the release, as aforesaid, then such creditors are to be paid the residue out of any moneys which may remain after those creditors who have been hereinbefore preferred specially by name have been satisfied in full of their demands; such distribution also to be made *pro rata.* And it is agreed, that the said trustee may reimburse himself all costs and expenses he may be put to in the management and performance of the trusts hereby reposed, together with allowance and commissions customary among merchants.

And the said Hanson N. Walters and W. W. Walters, do hereby constitute the said Andrew Wylie their lawful attorney, in their name, but for the purposes aforesaid, to demand, sue for, recover, and receive, all and singular the premises assigned, in trust, and upon receipt of the same, or any part thereof, to give acquittances; to compound for the same, or any part thereof, or settle the same by arbitration, at his discretion; and, generally, to do all acts necessary to effect the interest of these presents: and the said Andrew Wylie covenants and agrees, that he will faithfully execute all the trusts herein and hereby reposed in him, and render a true account of the same according to law. In testimony whereof we have hereunto set our hands and seals, this twenty-eighth day of September, in the year of our Lord one thousand eight hundred and thirty-nine.

H. N. WALTERS, [L. S.]　
W. W. WALTERS, [L. S.]　
ANDREW WYLIE. [L. S.]

Release appended to the assignment:

Know all men by these presents, that we, the undersigned, subscribing creditors of Hanson N. Walters and W. W. Walters, partners, under the firm of H. N. Walters & Co., for the consideration in the foregoing indenture mentioned, do severally, for themselves and respective partners, release unto the said Hanson N. and William W. Walters, all manner of action and actions, judgments, executions, and all other claims and demands whatsoever, which they in any manner have and possess. Witness our hands and seals, &c.

It is admitted that the Messrs Walters were possessed of no estate, real or personal, besides what might pass under the above assignment.

The defendant is admitted to be the high sheriff of the county of Allegheny.

On the 7th day of October 1839, A. & S. Lippincott obtained a judgment against the said H. N. Walters & Co. (No. 339, of November term 1839,) for the sum of 3038 dollars, for a debt contracted prior to the date of the assignment, and on the 3d

[Bayne v. Wylie.]

day of December 1839, a *fieri facias*, No     to January term 1840, was issued in the district court in which the judgment was obtained, and put into the hands of the defendant, by virtue of which execution so issued, the defendant levied on the goods in controversy, and claims title to the same under such execution.

It is admitted, at the time of the assignment, H. N. Walters & Co. were largely indebted to creditors whose names are not mentioned in the assignment, and several actions were proceeding against them at the date of the assignment, and on the claim of A. L. Lippincott judgment was regularly obtained, under the rules of the court, on the Monday next succeeding the date of the assignment.

The plaintiff took possession of the goods of the assignors on the day of the assignment, and held possession at the time of the levy. It is also admitted that some of the creditors signed the release within the limitation of sixty days in the assignment. It is admitted that the assets in the hands of the assignee were not sufficient to discharge the whole of the debts which were due and owing by the assignors at the time of their assignment.

If the court be of opinion, upon the foregoing statement of facts, that the title to the goods so levied upon was legally vested in the said plaintiff, then judgment to be entered for said plaintiffs: if, on the contrary, the court should be of opinion that the assignment, as against the creditors of the said Messrs Walters, is fraudulent, and void in law, and vested no title to the goods in said plaintiff, judgment to be entered for the defendant.

The court below rendered a judgment for the plaintiff.

*Shaler* and *Metcalf,* for plaintiff in error, cited 5 *Whart.* 131.

*Wylie* and *M' Candless,* for defendant in error, cited 5 *Rawle* 221; 3 *Penns. Rep.* 91; 2 *Penns. Rep.* 92; 3 *Watts* 198; 6 *Watts* 543.

Per Curiam.—This cause has been argued as if this species of assignment were a cherished child of our protection; but that notion is certainly founded on a misconception of the origin and bent of our decisions. We have held no other doctrine in respect to it than has been held by the courts of our sister states. That the rule of the court is not peculiar to Pennsylvania, is shown by Stephenson *v.* Haywood, *Prec. in Chan.* 310, and its countless progeny, both English and American, collected in 2 *Kent* 532. Such a rule is the inevitable consequence of an admitted principle of the common law, which the legislature alone is competent to change; for where a failing debtor is allowed to pay his debts in the order that pleases him, he necessarily has it in his power to make his own terms; and no statutory regulation of the trust can prevent him. Nor would it help the matter to prohibit voluntary assignments altogether, when the purpose may be as readily effected by confession of judgment, by direct delivery of the effects to the preferred creditors, without

[Bayne v. Wylie.]

the intervention of trustees, or by a thousand other contrivances which the ingenuity of fraudulent men can always supply. Nothing less than a sequestration of the effects can go to the root of the evil; and so long as the national legislature shall refuse to exercise its exclusive power to enact a bankrupt law, so long will the creditor be under the control of his debtor, and so long will it be our duty to restrain the subordinate courts and ourselves from exercising a legislation which is forbidden even to the legitimate legislatures of the states.

That a particular form of release is prescribed and appended, can not affect the legality of the assignment. The creditor is a purchaser of his preference, and must take it on the debtor's terms.

Nor is it more material that the merchandize was to be delivered in specie, to a particular class of the preferred creditors, at prime cost. Though a debtor may not give away his property on pretence of payment, yet when a common price is fixed as a measure of distribution, it is immaterial at what it is put, provided the actual value is not more than adequate to satisfaction in full; and there is no pretence that it was so in this instance, for no stock of old goods would sell for cost. That the question of value should be settled by the assignee, who was a naked trustee, was entirely proper. He had access to the original invoices; and, indeed, it was not at all material how he settled it betwixt the preferred creditors, each of whom had an equal right to take at the valuation; and all of whom might take jointly, in order to put the goods to sale, if they could not agree to take separately. There is nothing in that circumstance, therefore, and it is a conclusive proof of fair intent, that any surplus, which might remain, was directed to be distributed among those who should not release.

Judgment affirmed.